UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| GABRIEL MENDOZA, | ) | |
| | ) | |
| Petitioner | ) | CAUSE NO. 3:12-CV-72 RLM |
| | ) | (Arising out of 3:05-CR-147 RLM) |
| vs. | ) | |
| | ) | CAUSE NO. 3:12-CV-73 RLM |
| UNITED STATES OF AMERICA | ) | (Arising out of 3:09-CR-16 RLM) |
| | ) | |
| Respondent | ) | |

OPINION and ORDER

To face trial for one's life in a language other than one's own is a terrifying thing. The courts of the United States provide interpreters to criminal defendants whose native language is not English during all critical stages of the proceeding. Gabriel Mendoza has filed a petition under 28 U.S.C. § 2255 claiming constitutional shortcomings in connection with translation issues in his prosecution. He complains that his attorney didn't provide him with Spanish translations of discovery material as he requested, and that improper procedures were used when the court interpreter was used to translate questions to, and answers given by, his common law wife at trial. For the reasons that follow, the court denies Mr. Mendoza's petitions.

I. UNCONTESTED FACTS

First, the uncontested facts pertinent to this petition.

Mr. Mendoza was indicted on Cause No. 3:05-CR-147 in December 2005. He wasn't arrested until October 2008. He was indicted in Cause No. 3:09-CR-16 in February 2009. The charges involved possession, distribution, and conspiracy to distribute cocaine and methamphetamine in various amounts and at various times. Attorney Mark Lenyo was appointed to represent Mr. Mendoza in both cases; Mr. Mendoza pleaded not guilty in both matters. In March 2009, the government's motion to consolidate both cases for trial was granted. Following trial, the jury found Mr. Mendoza guilty. The court sentenced him to what amounted to a life sentence. The court of appeals affirmed the conviction in November 2010. United States v. Mendoza, 401 F. App'x 128, 2010 WL 4851063 (7th Cir. 2010).

Mr. Mendoza complained from nearly the very beginning of the case about not getting Spanish translations of the evidence the government had. In February 2009, he wrote to Judge Sharp, who had been the original judge in the case, asking Judge Sharp to make Mr. Lenyo provide Spanish translations, as well as asking for an interpreter when he was in court. The court took no action on the letter because Mr. Mendoza was represented by counsel.

After a few continuances, the trial was set to begin on October 5, 2009. Mr. Mendoza asked for another lawyer. The court asked Mr. Mendoza why he wanted another lawyer, but Mr. Mendoza's responses kept swerving into the facts of the case. Rather than let Mr. Mendoza provide the prosecution with any more evidence, the court told Mr. Mendoza he should talk to Mr. Lenyo over the lunch

break about what he could say about his request without giving incriminating or inconsistent statements. Court broke for lunch. According to the record, the presiding judge became ill in the afternoon, so the trial didn't resume until the next morning.

The next morning, October 6, the court asked Mr. Lenyo if Mr. Mendoza still wanted to speak. Mr. Lenyo's response of record is quoted because it becomes important in the final ruling:

> Your Honor, I believe Mr. Mendoza does want to address the Court. After court concluded yesterday for the morning session, we did have a discussion. Mr. Mendoza voiced his complaints. I tried to give him explanations as to why I think a lot of his concerns deal with strategy decisions on why certain witnesses are not being called by the Defense. In fact, at this point, it looks like we don't plan on having any witnesses. There are extensive witness lists, forty witnesses from the Government, which, essentially, encompasses those witnesses who I had hoped to elicit information from in defense of Mr. Mendoza. I believe Mr. Mendoza may have some comments as well.

The court then asked Mr. Mendoza if he wanted to add anything. He wanted to speak and said, through the interpreter, that Mr. Lenyo hadn't prepared him enough for trial because he, Mr. Mendoza, was waiting to have the government's documents translated into Spanish. He said that based on papers he had a niece translate for him, there were discrepancies in the evidence and things were discussed that happened when he wasn't in the country.

The court gave Mr. Lenyo a chance to respond. Mr. Lenyo said, among other things, that discovery had come in a constant stream, and that reviewing each and every document with Mr. Mendoza was impractical and impossible in light of

3

the number of documents. A few minutes later, Mr. Grimmer referred to more than 3,500 pages of discovery. Mr. Lenyo outlined the number of times he had discussed the case with Mr. Mendoza, and said that much of what Mr. Mendoza wanted to see in Spanish was going to be presented by oral testimony at trial. Mr. Grimmer reported that while there was considerable electronic evidence in the discovery, most of it was inaudible, and the government was only going to use about three brief tapes at trial. Most of the evidence, he said, would come from informants' testimony.

After hearing from both sides, the court denied the motion for a new attorney, trying to apply the considerations the court of appeals says district courts should apply to day-of-trial motions for new counsel. *See* United States v. Simmons, 582 F.3d 730 (7th Cir. 2009); United States v. Van Waeyenberghe, 481 F.3d 951 (7th Cir. 2007).

Trial proceeded. Two sworn interpreters were in court that day — Susannah Bueno and Ana Maria Toro-Greiner. Court interpreters ordinarily work in pairs in day-long jury trials so one can rest while the other translates.

The government's second witness of the day was Aurora Virruta, Mr. Mendoza's common law wife and a native Spanish-speaker. The Assistant United States Attorney handling that witness, Frank Schaffer, told the court that Ms. Virruta doesn't speak English. After a bench conference, the court asked Ms. Toro-Greiner to move up to the witness stand so that she could translate the questions to Ms. Virruta and translate her answers to the courtroom. Mr. Lenyo

4

didn't object to that procedure. Ms. Toro-Greiner did as the court asked during the direct examination, and Ms. Bueno took over that role during the cross and the very brief redirect. At the close of Ms. Virruta's testimony, the trial broke for lunch.

After the jury left for lunch and while the rest of the trial participants were in the courtroom, the court asked both sides if they had anything to raise before the break, and both said no. The court asked the same question when trial resumed in the afternoon, and got the same answer.

Those are the uncontested facts. Facts that turn on credibility that will be covered as this opinion unfolds.

## II. DUE PROCESS

Mr. Mendoza contends that the absence of an interpreter at counsel table, physically or electronically, during Aurora Virruta's testimony effectively deprived him of his due process right to be present during trial because he couldn't discuss matters with his attorney as the testimony was taking place and because he couldn't hear the interpreter translate the questions put to Ms. Virruta from English to Spanish.

The government says Mr. Mendoza procedurally defaulted this due process claim by not raising it in his direct appeal. When an issue isn't raised on direct appeal, a petitioner will be barred from collateral review under 42 U.S.C. § 2255 unless he can show good cause for not raising the issue and actual prejudice,

Massaro v. United States, 538 U.S. 500, 504 (2003), or that "a refusal to consider the issue would be a fundamental miscarriage of justice." Galbraith v. United States, 313 F.3d 1011, 1006 (7th Cir. 2002). This issue isn't one he could have raised on direct appeal because the interpreters' availability isn't shown on the record. His complaints of actual prejudice are set forth in the discussion of this claim. He has shown cause and alleged prejudice, so the court proceeds.

Due process is denied when a criminal defendant can't understand what is being said to him, or when a translation's accuracy and scope is subject to grave doubt, or when the nature of the proceeding isn't explained in a way that ensures the defendant's full understanding, or when the defendant was unable to understand due to language difficulty. United States v. Johnson, 248 F.3d 655, 663 (7th Cir. 2001); United States v. Cirrincione, 780 F.2d 620, 634 (7th Cir. 1985).

The Court Interpreters Act, 28 U.S.C. §§ 1827, 1828, was enacted to "mandate the appointment of interpreters under certain conditions," "establish statutory guidance for the use of translators in order to ensure that the quality of the translation does not fall below a constitutionally permissible threshold," and "ensure that the defendant can comprehend the proceedings and communicate effectively with counsel through the appointment of a certified interpreter." United States v. Johnson, 248 F.3d 655, 661 (7th Cir. 2001) (internal quotations and citations omitted). The Act provides in pertinent part that

6

> The presiding judicial officer . . . shall utilize the services of the most available certified interpreter . . . in judicial proceedings instituted by the United States, if the presiding judicial officer determines on such officer's own motion or on the motion of a party that such party (including a defendant in a criminal case) or a witness who may present testimony in such judicial proceedings (A) speaks only or primarily a language other than the English language . . . so as to inhibit such party's comprehension of the proceedings or communication with counsel or the judicial officer, or so as to inhibit such witness' comprehension of questions and the presentation of such testimony.

28 U.S.C. § 1827(d)(1).

### A.

The evidence presented at the hearing on this petition doesn't support Mr. Mendoza's factual claim that no interpreter was available for communication between client and counsel during Aurora Virruta's testimony. Two interpreters were in the courtroom — Ms. Bueno and Ms. Toro-Greiner — on the second day of trial. Mr. Lenyo testified forcefully and persuasively that one interpreter stood near the witness stand to translate the questions to Ms. Virruta and the answers she gave, and the other interpreter was at counsel table with Mr. Mendoza. Mr. Lenyo didn't say that the second interpreter was translating testimony to Mr. Mendoza (which would have been superfluous in light of the other interpreter's work), but she was available to Mr. Mendoza for clarification or communication with Mr. Lenyo.

The testimony of court interpreters Bueno and Toro-Greiner modestly corroborates Mr. Lenyo's testimony. Ms. Bueno testified that while she didn't

7

remember where she sat while Ms. Toro-Greiner translated the Virruta direct examination for the courtroom, she was in the courtroom. Ms. Bueno didn't remember where Ms. Toro-Greiner was during the Virruta cross-examination, but said it would be very unusual for either interpreter to be out of the courtroom during testimony. Ordinarily, Ms. Bueno testified, the other interpreter would sit near the defendant without interpreting to him, in case he had any questions. Ms. Toro-Greiner testified that she had no independent recollection of Ms. Bueno's location during the Virruta direct examination, but agreed it would be unusual for either interpreter to be outside the courtroom during testimony. There is nothing inconsistent between their testimony and what Mr. Lenyo recalled, and Ms. Bueno's testimony about what usually is done is wholly consistent with Mr. Lenyo's recollection.

Mr. Mendoza, in contrast, testified to entirely different facts. He said there was no interpreter nearby for him to use during Ms. Virruta's testimony. He said he signaled the interpreter (his testimony left it unclear which interpreter he signaled) when he wanted to talk to Mr. Lenyo (apparently while Mr. Lenyo was cross-examining Ms. Virruta), but the interpreter ignored him.

Mr. Lenyo testified very credibly. He used his records to look up what he couldn't remember, conceded and explained his lack of objection to the interpreter arrangement and his refusal to provide Spanish translations of discovery documents, and responded patiently to questions that the questioner knew he couldn't answer. He conceded the "anything's possible" types of questions, but

8

was certain and firm that an interpreter sat near Mr. Mendoza during the Ms. Virruta testimony. Mr. Lenyo's testimony was quite believable and persuasive.

The same can't be said of Mr. Mendoza's testimony. Mr. Mendoza lied repeatedly during his testimony at this hearing. His own attorney seemed to struggle to extract the truth from him. Mr. Mendoza testified that Mr. Lenyo visited him in jail no more than three times before trial and discussed nothing beyond continuances and two pictures of a truck. Mr. Lenyo's records, introduced in evidence by Mr. Mendoza's attorney, refute that testimony. Mr. Mendoza testified that Mr. Lenyo didn't summarize the evidence for him or even talk to him generally about the case. That is hogwash. Mr. Lenyo has tried criminal cases in this court since 1986 and has served as a public defender in the state courts since 1997, now handling the defenses of major crimes prosecutions. The proposition that an attorney with that experience would never discuss anything substantive with his client falls well outside the realm of the believable — especially since Mr. Lenyo arranged for Mr. Mendoza to be taken to the United States Attorney's office to see the evidence the government had.

While preparing for trial, Mr. Lenyo asked the government's attorney to allow Mr. Mendoza to view the evidence arrayed against him. Ms. Bueno accompanied Mr. Mendoza and Mr. Lenyo as an interpreter, but since an agent was present during this unusual "evidence view," Mr. Lenyo told Mr. Mendoza not to speak while in the United States Attorney's Office. This trip to view the evidence

9

was imperfect because Mr. Mendoza couldn't read the documents, but goes well beyond what an attorney usually does to prepare a client for trial.

Returning to the testimony at the hearing on this petition, Mr. Mendoza testified that when he used the headset to hear the interpreters at trial, the headset occasionally didn't work. He said some times he had to face the wall opposite the witness to get a clear signal. He said there was interference on the line, keeping him from hearing the Spanish voices on the headset. Mr. Mendoza says he told the interpreters about the problems he was having, but they ignored him. That is poppycock. Those three interpreters who Mr. Mendoza says ignored him all testified at the hearing. Their dedication to what they do was easy to see and feel. The court doesn't believe that any (much less all) of those interpreters ignored Mr. Mendoza's complaints about the equipment.

Most significantly, Mr. Mendoza testified in this hearing that on October 5 (the day of Ms. Virruta's testimony), after the court told Mr. Lenyo and Mr. Mendoza to confer over the lunch hour about what Mr. Mendoza could and couldn't safely say when explaining why he wanted a different lawyer, there was no discussion, no interpreter — no further discussion with Mr. Lenyo that day. That is balderdash. When court began the next morning, Mr. Lenyo said, "After court concluded yesterday for the morning session, we did have a discussion. Mr. Mendoza voiced his complaints. I tried to give him explanations as to why." Mr. Mendoza then addressed the court, never disagreeing with what Mr. Lenyo had just said; Mr. Mendoza simply complained again that he didn't have documents

in Spanish and that the evidence against him wasn't very impressive. Mr. Mendoza wanted a new lawyer. If Mr. Lenyo had just lied to the court about meeting with Mr. Mendoza the day before, Mr. Mendoza would have let the court know then, not four years later.

Mr. Mendoza testified that he got translations of none of the written discovery, but his letter to the court commented on internal inconsistencies in the reports that he had looked over. He answered questions during the hearing on his § 2255 petition before they were translated from English to Spanish, while testifying that he spoke no English whatsoever. Mr. Mendoza was painfully unbelievable, perhaps the least credible witness the presiding judge has seen in thirty years.

The court credits Mr. Lenyo's testimony about what occurred during Ms. Virruta's testimony. For that matter, the court credits Mr. Lenyo's testimony over Mr. Mendoza's testimony on any point on which they disagree.

B.

Even if the second interpreter hadn't been at counsel table, there still would have been no denial of due process.

The law and the constitution require that a defendant be able to understand the testimony and be able to communicate with his attorney, but no case has held that a defendant has the right to be able to do both simultaneously. In <u>United States v. Johnson</u>, 248 F.3d 655 (7th Cir. 2001), the defendants argued that a

11

shared interpreter arrangement violated their Fifth and Sixth Amendment rights, claiming the court should have provided an additional court-appointed interpreter to be by their side at the defense table. The court rejected that claim: "While we do read the Constitution as ensuring a defendant's right to communicate with his or her counsel, we do not read the Constitution as mandating the appointment of an additional interpreter to sit at the defense table. The solution adopted by the district court to allow the defendants to use the court-appointed interpreter to communicate with their counsel during breaks fulfilled the defendants' right to communicate with counsel." 248 F.3d at 664.

Mr. Mendoza could understand the witness's testimony, which was given (a) in his own language and (b) by his common law wife of at least twenty years — they came to the United States together in 1984. Mr. Mendoza could understand the questions put to the witness because the questions were translated aloud from English to Spanish in open court. Both interpreters testified that they translate questions loud enough for a person at the defense table to hear, and Mr. Mendoza didn't say he couldn't hear.

Even if Mr. Mendoza had had no elbow interpreter through whom he could communicate with Mr. Lenyo during the testimony, the interpreters were available for that purpose at all other times during the trial, including when court was not in session. One such occasion was the lunch break immediately after Ms. Virruta testified. Mr. Mendoza could have communicated with Mr. Lenyo immediately before or during the lunch break. When court resumed after lunch, the court

asked whether the defense had anything to raise before the jury was brought in, and Mr. Lenyo responded that there was nothing to raise. At that point, the court interpreter was only translating to and from Mr. Mendoza.

C.

Mr. Mendoza suffered no deprivation of his right to due process.

II.

Mr. Mendoza raises two claims of constitutionally ineffective of assistance of counsel. First, he complains that Mr. Lenyo failed to propose an alternative method of interpreting Ms. Virruta's testimony to accommodate communication between Mr. Mendoza and Mr. Lenyo during her testimony. Second, he complains that Mr. Lenyo failed to comply with Mr. Mendoza's request that all discovery be translated into Spanish for him. To demonstrate ineffective assistance of counsel, Mr. Mendoza must prove that Mr. Lenyo's performance fell below an objective standard of reasonableness, and that Mr. Mendoza suffered prejudice as a result of that. Strickland v. Washington, 466 U.S. 668, 688-694 (1984). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's conduct was within the 'wide range' of reasonable professional assistance. The challenger's burden is to show that 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth

13

Amendment.'" Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 787 (2011) (*quoting* Strickland v. Washington, 466 U.S. at 687 & 689). "The important inquiry is 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" United States v. Recendiz, 557 F.3d 511,513 (7th Cir. 2009) (*quoting* Strickland v. Washington, 466 U.S. at 686).

A.

There was no ineffective assistance with respect to the interpreter arrangement. As discussed in connection with the Due Process claim, both of the possible arrangements of the interpreters, whether what Mr. Lenyo remembers or what Mr. Mendoza remembers, were perfectly acceptable arrangements under both the Sixth Amendment and the Court Interpreters Act. Even if a better arrangement might be hypothesized, counsel's acceptance of the acceptable doesn't fall below any objective standard of reasonableness.

B.

There was no ineffective assistance of counsel with respect to the failure to provide Spanish translations of all of the thousands of pages of discovery. Mr. Lenyo testified about his practice of summarizing discovery to defendants in the course of developing trial strategy, and no evidence or authority suggests that summarizing discovery rather than translating each page falls below an objective

14

standard of reasonableness. The court doesn't believe Mr. Mendoza's testimony that Mr. Lenyo never summarized the discovery materials to the extent they were pertinent to the prosecution or defense case. Mr. Mendoza cites no authority for the proposition that a non-English-speaking defendant is entitled to word-for-word translations of thousands of papers of discovery.

The visit to the United States Attorney's Office is a red herring as to Mr. Lenyo's performance. Ms. Bueno was present as an interpreter to translate the case agent's explanation of the evidence to Mr. Mendoza. The agent was present throughout the defense visit because the evidence included such things as a very large quantity of cocaine. To allow Mr. Mendoza to ask questions and hear answers in the agent's presence might well have fallen below an objective standard of reasonableness.

Even if Mr. Lenyo's performance fell below an objective standard of reasonableness — and it didn't — Mr. Mendoza suffered no prejudice as a result. There is no claim that Mr. Mendoza misunderstood any evidence that was presented at trial; there is no showing that Mr. Mendoza could have contributed anything different to the trial strategy or trial preparation had some item of discovery been translated to him. The only question he wanted Mr. Lenyo to ask of Ms. Virruta was whether the police had threatened to take her children away from her. Mr. Mendoza offered no evidence to suggest Ms. Virruta would have said she had been threatened, or even why he believed she had been threatened. Mr.

Mendoza had run out on her and his children when he fled in 2005 and hadn't seen her for more than four years by the time of trial.

Mr. Lenyo's decision not to provide Mr. Mendoza with Spanish translation of all papers produced in discovery didn't fall below any objective standard of reasonableness.

### III.

Mr. Mendoza hasn't shown that his rights to due process or effective assistance of counsel were denied. The court DENIES his motions to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

SO ORDERED.

ENTERED:  August 27, 2013

  /s/ Robert L. Miller, Jr.
Judge, United States District Court